IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:09-cv-266-GCM

| FC SUMMERS WALK, LLC, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| TOWN OF DAVIDSON, | ) | |
| Defendant. | ) | |

This matter is before the Court based upon the parties' briefs in response to the Court's Order requesting analysis of Burford abstention with regard to this case. [D.I. 28]. The Court has determined that Burford abstention should apply in this instance. To avoid any prejudice to the Plaintiff as a result of the statute of limitations, the case will be remanded to the Mecklenburg County Superior Court, Case No. 09-CVS-12469.

**I. Background**

This action arises out of the Town of Davidson's ("Defendant") application of its Adequate Public Facilities Ordinance ("Davidson APFO") to a residential subdivision being developed by FC Summers Walk, LLC. ("Plaintiff"). Plaintiff alleges that the Davidson APFO violates due process, equal protection and the takings clause under the Fifth and Fourteenth Amendments of the U.S. Constitution and Article I, Section 19 of the North Carolina Constitution.

The Davidson APFO sets adequate levels for public facilities and services, including law enforcement, fire protection, and parks. Pursuant to the APFO, a developer submits an

1

application to the Town of Davidson's Planning Director (the "Planning Director"). The Planning Director makes a preliminary finding on the application, which includes an analysis of the timing and phasing for the development, the impact on public facilities, and recommended actions for the developer. The Planning Director then recommends whether the application should be conditionally approved or denied by Davidson's Board of Commissioners (the "Town Board"). After completing the preliminary finding, the Planning Director makes a written determination.

Here, the Plaintiff submitted an application for its subdivision development to the Planning Director, who in turn issued four determinations: one in 2005, one in 2006, one in 2007, and a "Final Determination" in 2008. The Planning Director decided that under the Davidson APFO the Plaintiff's proposed development would adversely impact law enforcement, fire protection, and community parks. The Town, via the determinations, informed the Plaintiff of its options either to wait to build the development until there were adequate facilities to support it or to pay a fee under the APFO to facilitate the building of such facilities. The calculations outlined the costs for the Plaintiff's *pro rata* share of the advancement of the impacted public facilities, but the Planning Director did not calculate the impact and *pro rata* cost using the metrics defined under the APFO.

Only the 2005 determination was approved by the Town Board. The 2008 determination purports to be a "Final Determination" that supersedes previous determinations (a point disputed by the Town), but it has not been approved by the Town Board. The Plaintiff alleges that its employee objected to the 2005 determination but did not appeal because Plaintiff did not believe it to be a "final determination." Plaintiff did appeal the 2006 and 2007 determinations, but did

not appeal the 2008 "Final Determination." The Davidson Board of Adjustment denied the appeals as untimely and did not hear evidence. The Superior Court of Mecklenburg County issued a void order on August 5, 2009, after the case was removed to this Court on July 2, 2009, affirming the Board's decision. Plaintiff posted bonds to cover the pro rata advancement fees provided in the 2005 and 2006 determinations. The Defendant has demanded payment of those fees and has threatened to call the bonds if Plaintiff does not pay. The action was properly removed to this Court on July 2, 2009. [D.I. 1]. Defendant's Motion to Dismiss [D.I. 3] was denied on January 20, 2010. [D.I. 13]. Both parties filed Motions for Summary Judgment. [D.I.s 17 and 19].

## II. Burford Abstention

In <u>Burford v. Sun Oil Co.</u>, a district court dismissed a proceeding dealing with rights of various property owners to drill for oil, an issue for which the state had set up a review procedure. 319 U.S. 315 (1943). The Supreme Court affirmed the dismissal and held that when a district court sits in equity, it may decline to exercise its jurisdiction over a case to demonstrate "proper regard for the rightful independence of state governments in carrying out their domestic policy." 319 U.S. 315, 318 (1943). <u>Burford</u> gave birth to what is now known as <u>Burford</u> abstention, which the Supreme Court defined in <u>New Orleans Public Service, Inc. v. Council of the City of New Orleans</u>:

> [W]e have distilled the principle now commonly referred to as the "Burford doctrine." Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) where there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar;" or (2) where the "exercise of federal review of the question in a case and in similar

3

cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." 491 U.S. 350, 361 (1989)(citations omitted).

The Court recognizes that abstention, under Burford or any other abstention doctrine, is the exception and not the rule. Federal courts have "virtually unflagging" obligations to exercise their jurisdiction. MLC, Automotive LLC v. Town of Southern Pines, 532 F.3d 269, 280 (4th Cir. 2008). There is no specific formula for applying Burford abstention; the doctrine stems from the principles of comity and dual sovereignty. Id.

Based on the aims of comity and dual sovereignty, abstention has been of particular import to federal courts in examining local and state zoning and land use laws. In Fralin & Waldron, Inc. v. City of Martinsville, Va., the Fourth Circuit found that the allegations of the complaint

> raise[d] legitimate questions involving municipal zoning ordinances, the correct construction of local land use law as to special use permits, and the delineation of the proper scope and exercise of local administrative discretion. Understandably, the courts of Virginia have extensive familiarity and experience with such matters, and we believe that they should have the initial opportunity to pass upon them. A state adjudication may well avoid the necessity of a decision on the federal constitutional question presented as well as avoid needless friction in federal-state relations over the administration of purely state affairs. We conclude that the requisite special circumstances warranting abstention are present here . . . . 493 F.2d 481, 482-483 (4th Cir. 1974)(finding abstention on the basis of Louisana Power and Light Co. v. City of Thibodaux, 360 U.S. 25 (1959)).

More recently, in MLC Automotive, the Fourth Circuit found that "cases involving questions of state and local land use and zoning law are a classic example of situations where Burford should apply." 532 F.3d 269 at 282. Land use and zoning issues are matters of particular local concern where federal courts have not traditionally left their footprint. Id. at 284. Thus, in cases where the plaintiff's claims stem from construction of state and local land use

4

laws, or the federal claims are "entangled in a skein of state-law that must be untangled before the federal case can proceed," federal courts should abstain. New Orleans Public Service, Inc., 491 U.S. at 361; see also, MLC Automotive, 532 F.3d 269 at 282. The Fourth Circuit noted that Burford abstention was especially appropriate in MLC Automotive, where North Carolina law was at issue, because the North Carolina Supreme Court has no mechanism by which federal courts can certify questions. 532 F.3d 269 at 284.

### III. Burford Analysis

This action is for a declaratory judgment and injunctive relief and not for monetary damages. The Supreme Court has held that when a party brings a declaratory judgment action, the district court has discretion in deciding whether to assert jurisdiction and hear the action or abstain from it. Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to practical considerations of practicality and wise judicial administration." Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995). The Fourth Circuit has recognized this discretion: "district courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions." United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998).

Typically, when a district court declines jurisdiction in a declaratory judgment action, it is in favor of a parallel state proceeding. While a parallel state proceeding is not ongoing here, in light of this discretion, and the application of Burford abstention to land use cases, the case is remanded to state court because North Carolina law in this area is not settled and because the federal claims are "entangled in a skein of state-law that must be untangled."

5

**A. State of North Carolina Law**

Plaintiffs claim that the law in North Carolina on APFOs is settled. The North Carolina Court of Appeals has consistently held that APFOs in the school context are unconstitutional under the North Carolina Constitution. Union Land Owners Ass'n. v. County of Union, 689 S.E.2d 504 (N.C. App. Dec. 2009); Amward Homes, Inc., et al. v. Town of Cary, 698 S.E.2d 404 (N.C. App. Aug. 2010); Lanvale Properties, LLC and Cabarrus County Building Ass'n. v. County of Cabarrus and City of Locust, 2010 WL 3467567 (N.C. App. Sept. 2010)(unpublished). The parties appealed County of Union to the North Carolina Supreme Court, where their Petition for Discretionary Review was denied. --- S.E.2d ----, 2010 WL 4151941 (N.C. Oct. 7, 2010). North Carolina law does appear to be settled on the issue of whether school APFOs are constitutional, but the Court finds that the law on other APFOs is still a "gray area" under North Carolina law. See MLC Automotive LLC v. Town of Southern Pines, 532 F.3d 269, 284 (4th Cir. 2008). Defendant's argument that the Davidson APFO is distinguishable from the others recently examined in the North Carolina courts is a persuasive one. The North Carolina courts have made clear that (1) the legislature has specifically declined to approve school impact fees, and (2) the North Carolina Constitution places the duty to fund public schools specifically on the legislature and local governments, and "the General Assembly has neither expressly nor impliedly authorized defendant to shift that duty using subdivision ordinances." Union Land Owners Ass'n., 689 S.E.2d at 508. The constitutional mandate of government funding for schools differentiates those APFOs from the APFO at hand, which deals not with schools but with adequate public facilities like fire stations and public parks.

### B. Independent Federal Claim

The Plaintiff claims there is an independent federal claim here in that *if* the APFO is authorized under North Carolina law, it is unconstitutional as applied to the Plaintiff. Defendant argues that the case can be resolved without resort to state planning and zoning issues because the Plaintiff waived its right to challenge the APFO by accepting its benefits, the APFO is distinguishable from the recent APFOs discussed above, and the determination of whether the APFO was properly applied need not involve an examination of state law. In making these arguments, the parties implicitly acknowledge that this case comes down to whether or not the APFO is constitutional under North Carolina law. Such a determination will also include a determination of whether the APFO is a zoning or a subdivision ordinance, and thus which statute of limitations applies and the appropriate administrative procedure that should be followed–all of which need to be determined under state law. As evidenced by the recent North Carolina court activity, APFOs are an important and pressing *local* issue with which the state courts have increased familiarity and experience. Resolution of federal issues, if any, is entirely dependent on the outcome of the state law issues involved. As the Fourth Circuit discussed in Pomponio v. Fauquier County Bd. Of Sup'rs, "[v]irtually all [cases involving state or local zoning or land use laws], when stripped of the cloak of their federal constitutional claims, are state law cases. The federal claims are really state law claims because it is either the zoning or land use decisions, decisional processes or laws that are the bases for the plaintiffs' federal claims." 21 F.2d 1319, 1326 (1994)(overruled on other grounds). Such is the case here, and North Carolina has an interest in continuing to develop its jurisprudence on land use laws without federal court intervention. In the interest of dual sovereignty and comity, the Court

hereby abstains from hearing the case at bar. A stay is inappropriate because there are no monetary damages involved and the purpose of the Burford doctrine is for the federal court to become uninvolved and decline to exercise its jurisdiction. Typically, federal courts dismiss cases under Burford abstention. Here, because of the Plaintiff's concern regarding the statute of limitations and to avoid undue prejudice to Plaintiff, the case is remanded to state court for the continuation of Case No. 09-CVS-12469.

The case is **HEREBY REMANDED** to the Mecklenburg County Superior Court, Case No. 09-CVS-12469.

The parties' Motions for Summary Judgment [D.I.s 17 and 19] are thereby found to be **MOOT**.

**SO ORDERED.**

Signed: October 28, 2010

Graham C. Mullen
United States District Judge